Good morning, Counsel. Good morning, Your Honor, and may it please the Court, Sheree Khan-Herrera and with me my partner, Wesley Ching, Board Defendant Appellant, DB Insurance Company. I'd like to reserve two minutes for a brief rebuttal, if I may. This case involves a dispute over the amount of insurance coverage available for loss sustained by a company from one employee's embezzlement. It is undisputed that the cause of the loss was the dishonesty or crime of a single employee, the Arc's bookkeeper, Ms. Amarin. The first issue on appeal that led to what DB Insurance contends is an erroneous award of over $2.77 million in insurance coverage was a decision not to apply the exclusion under subparagraph 2H for employee dishonesty and criminal acts, not because it was inapplicable. The exclusion clearly applied to Ms. Amarin, who was an employee of the Arc and whose dishonest and criminal acts caused the claim loss, but because the District Court chose not to apply the exclusion in any way based on an interpretation of a selected phrase within the forgery and agent forgery coverage that was not supported by any case law. That interpretation we submit did not construe the coverage under the terms and conditions of the policy, commercial property policy as a whole, but instead used a finding of ambiguity where none existed to create agent forgery coverage. Let me ask you, so your position is that the forgery and alteration extension does not cover forgery by employees, correct? Correct, Your Honor. So what does it cover? Your Honor, it does cover, say, forgery if there were, somebody had stolen a check. It does provide, say, when a third party, like a vendor, a tenant, or anyone who maybe had access to these commercial properties stole a check and forged the signature on that check. And it even pays for litigation costs to defend a forgery action. But there's nothing in the forgery and alteration provision that suggests it was intended by the parties to delete or override exclusion 2H. It was only by the Arc's argument that some subcategory of a forgery by an agent must have been intended for coverage that led the District Court to adopt a coverage by ambiguity argument. Instead, we would submit that that phrase that the District Court focused on, made or drawn by one acting as your agent, describes the negotiable instrument, a check or an order to or direction to pay a certain sum of money made or drawn by or made or drawn upon you first or by one acting as your agent that is needed to constitute a negotiable instrument for which the company may be liable. That interpretation, made or drawn by one acting as your agent, used in that provision is reinforced by other language in the same provision, the next subparagraph, that refers to liability for refusing to pay for a covered instrument. Is there any case law interpreting this type of forgery provision as applied to employee forgery? I don't know that the party cited any. Your Honor, the one case that the District Court relied upon was the 1952 Mississippi case of Griffith v. Maryland Casualty Company, and we would submit that that is not applicable because it specifically involved a fidelity insurance policy with employee dishonesty coverage and depositors forgery coverage without an employee dishonesty exclusion. And the ARC argues that's irrelevant, but when looking at the insurance policy as a whole, we would submit that if you start with a policy like in Griffith that doesn't include an employee dishonesty exclusion versus the policy at issue here, which is a commercial property policy that does exclude coverage for dishonest or criminal acts of employees and then provides limited coverage under very limited circumstances, that that is what would be reasonably expected by the parties. So in other words, you're saying that the forgery and alteration provision has to be read in conjunction with the employee dishonesty provision? Yes, Your Honor. I believe that one of the critical construction role or critical rules of construction that should be followed by all courts in looking at a policy is that if all the terms in the policy can be read in harmony, that you have to interpret all the parts of the policy to make sense and not to generate a conflict simply to create coverage where there is none. Now based on an interpretation that gives reasonable, lawful meaning to all the terms in this policy, there does not have to be coverage for a special class of forgery by an agent. Again, any coverage for forgery is subject to exclusion to age, which indisputably applies here. Any loss caused by an employee's dishonesty or crime by whatever scheme, whether it's credit and gift card fraud, forgery, buying office furniture for herself, would be subject to the $250,000 sublimit. And that brings us to the second issue on appeal, Your Honors. Whether one $250,000 sublimit or five apply in this case, and that can be readily decided on the briefs because there is case law on this issue. But there are two issues, key issues that I want to highlight for the court's consideration today. The first is that the district court should not have relied on a generalization that Hawaii courts typically follow California insurance law. The two sites for that were two footnotes, one in Allstate v. Kim, a citation to the district court's own ruling 20 years ago. And the other one was another footnote, Nautilus Insurance v. K. Smith Builders. And in that footnote, the district court cited to Sentinel v. First Insurance Company as an example of the Hawaii Supreme Court frequently following California insurance law. But in the case of Sentinel, the site, the Pacific site is 875 P. 2nd 894, specifically on page 914. The Hawaii Supreme Court actually chose to follow Massachusetts law on the rebuttable presumption if an insurance company breaches the duty to fend. And at other points in the Sentinel decision, the Hawaii Supreme Court described how some California appellate cases were hopelessly inconsistent on other points. I'm a little, I didn't quite follow all of this. Is there California law that is contrary to your position? So the, it was used as a basis for applying five sublimits on the employee dishonesty coverage. And we would submit, Your Honor, that there is more recent cases, weight of authority in other jurisdictions that is more applicable to the facts of this case. And that the analysis should not have been that simplistic. The Hawaii appellate court, if it finds more probative cases that are on point, will follow those cases, not necessarily California insurance law. And the second point that I wanted to, to highlight here, in addition to the weight of more recent and probative case authority, finding that all loss caused by the embezzlement of one employee is one occurrence subject to a single limit. The key issue in those California cases, there was one actually appellate court case, a 1985 case ABS clothing that was then followed in 2000 by the Ninth Circuit in Karen Kane. That those two cases, as well as the Spartan Iron case, a not published 2001 Fourth Circuit case, those cases used a more general definition of occurrence, all loss caused by or involving one or more employees, whether the result of a single act or series of that, to just refer to a definition of occurrence. Whereas in our case, and in some of the other cases that we would submit support DB insurance's position, there was additional language, all loss or damage caused by the same person or involving a single act or series of related acts is considered one occurrence. And we think that that language, if all loss is considered one occurrence, in combination with the non-accumulation clause that is in DB's policy, in combination with express language in DB's policy that the most it will pay in any one occurrence for loss under this coverage extension is $250,000 in combination with the fact that the employee dishonesty provisions did not change in the same numbered policy for DB insurance, except for the last two to the case law, and I won't go over all of them, but for the case law that is cited in our brief for one single supplement. Unless you have any other questions, I guess I'll reserve. All right. Thank you, counsel. Christopher Gooden for the appellee. May it please the court. I represent the ARC in Hawaii, a non-profit that assists disabled people here in Hawaii. The ARC is here as the insured in a diversity case applying Hawaii insurance law to forgery and employee dishonesty coverages. I want to start by saying what I think is the most significant thing about Hawaii insurance law. As this court has observed, Hawaii insurance law interprets coverage under policies as liberally as possible in favor of the insured, in favor of coverage. It's through that legal lens that the forgery and employee dishonesty coverages are viewed in this case. I'll start with the forgery coverage, and I want to start with a big picture point. The insurer has repeatedly said we need to read the policy as a whole, read the provisions together. So in understanding the forgery coverage, I want to read the policy provisions together. And I think we've done that in our papers, but that's where I want to start today for the argument. And so looking at these provisions, we look at them, again, through the legal lens of the layperson. That's what the Hawaii Supreme Court tells us. The reasonable expectations of the layperson. That's how we view these provisions, and there are three. We have the criminal acts exclusion in the general policy form. We have the enhancement endorsement that includes both the forgery and employee dishonesty provisions. Maybe just to cut to the chase here, the forgery extension doesn't really say directly whose forgery we're talking about. Do you agree with that? I don't, Judge. What I would do is, if I could, walk through the text just very briefly. What the forgery provision says is that boss is covered for forgery of, among other things, checks made or drawn by one acting as your agent or claiming to have been so made or drawn. And so to me, those last two clauses speak to who's doing the misconduct. I believe a layperson could read them that way. Made or drawn. So you have forgery of a check made or drawn by one acting as your agent. That's the person who created the check, forged the check. And then the next clause is claiming to have been so made or drawn. So from the layperson's perspective, that would speak to the situation where it is not drawn by someone who is actually acting as your agent, but rather merely claiming to have been so made or drawn. So that's the third-party situation. Would this cover acts, then, of forgery by ARC itself or, let's say, ARC's president? I mean, here we're talking about, seemingly, a lower-level person. But by the logic of your argument, it seems that this would then be insuring against forgery at the highest levels of the nonprofit. Your Honor, that's not before the court, but potentially, yes, so long as they meet the definition of an agent. And the harm to the company is no less whether the money is taken by the president or a bookkeeper. It's not before the court, but in trying to interpret the provision, it seems to me that if your position is correct, then the insurer would have essentially agreed to insure against forgery by the nonprofit at, we could say, the most senior level, and that would not be a common provision, I don't think. Well, I believe that it insures specifically for agents. And so long as it meets the definition of an agent, then there is coverage, and a layperson could understand it from that perspective. That is how the court reviews it consistently. I may not understand this at all, but I thought that the person who was the guilty party here was actually an employee who was authorized to write checks. That is correct, Your Honor. A bookkeeper. A bookkeeper. So this check, on its face, had nothing wrong with it, did it? That is correct, Your Honor. But there's no reason why the bank would reject it. And didn't. And didn't over many, many years. So I guess my problem is, why is that a forgery? Because a forgery is a document that is false. Correct, Your Honor. And this isn't. Correct, Your Honor. Well, but it's forgery if you aren't authorized to sign the name. That is correct, Your Honor. For the particular purpose. So just because you can write a check for a company doesn't mean you can write checks that you're not authorized to write. If you sign the name under false authority, that's a forgery. That's correct, Your Honor. And ultimately, these checks were going to her. She was pocketing the money from these checks through various schemes. It's clearly dishonest. It's clearly stealing. Right, Your Honor. And as a factual matter, we, in the summary judgment briefing, in our concise statement of facts, set forth that Ms. Amerin forged checks in the following amounts for the following policy period. So that fact was undisputed. Was she convicted of forgery? Correct, Your Honor. Oh, actually, no, Your Honor. She was not convicted of forgery. I believe she was convicted of, I'd have to look at the District Court's decision, but I believe it was theft and I believe a computer-related crime. But not forgery. I don't believe it was forgery in particular. But as far as the definition of forgery, as we explained to the District Court, the checks were not authorized. These checks were clearly not authorized. And she presented many of them under false pretenses to various representatives of the ARC so the money would go to her. If they were authorized, she couldn't be convicted of theft. If they were. If she were authorized to write these checks, she could not be convicted of theft. That is correct, Your Honor. If she were authorized to write checks, she could be authorized to write checks for the, on behalf of the company, but not in order to steal the money. Not to steal money. Right. The conduct here obviously does fall within the employee dishonesty extension. There's some question about whether you get that once or you get that five times and we'll get to that in a second. What would be the sense of insurance policy that says you get $250,000 for any type of employee dishonesty. However, if it's forgery, you get many, many multitudes of times that. It would be an unusual agreement. How do you respond? It's two completely separate coverages in the enhancement endorsement. There's a specific coverage for employee dishonesty, which broadly covers all acts by employees that are dishonest. Forgery is a very narrow subset of that, dealing only with checks. There's lots of employee dishonesty, and it's hard to think of why forgery would be the worst form of employee dishonesty that would merit particularly extensive coverage. There's lots of things employees do wrong. I'm not sure I'd put forgery at the top of the list, but Unfortunately, Judge, this isn't in the record, but I've heard of instances where bookkeepers take money from companies. I think it was ensuring that it was at least including that particular risk. There are other forms of other forms of employee dishonesty, but where the bookkeeper takes money, that's specifically what we have. That might explain it, but I couldn't speak, Your Honor, to why there was a higher limit for forgery versus employee dishonesty. At the end of the day, reading these provisions, the layperson could see that a forged check by the bookkeeper, by one acting as your agent, was covered. Did the district court say there was a conflict? Yes, Your Honor. The district court did determine there was a conflict, and if I may speak to that very briefly. I would start with the employee dishonesty coverage. There's a clear conflict between the employee dishonesty coverage and the criminal acts exclusion. The employee dishonesty coverage covers specifically employee dishonesty. The criminal acts exclusion excludes dishonesty by employees, those types of acts. Clear conflict. DB does not say, oh, there's a conflict, but it already paid the $250,000. The thing I'll say about the employee dishonesty coverage is it doesn't include an exclusion to the exclusion. It doesn't say, oh, the exclusion for employee dishonesty doesn't apply. Now, looking at the forgery coverage, it clearly covers forgery by agents. Well, that's the question, though. I mean, that's what we're that's the conclusion. That's what we're trying to figure out here. If it's ambiguous, though, if we can't figure it out, then the any lack of clarity cuts against the insurance company who drafted these provisions. That is absolutely correct, Your Honor. And so, if there is a difference of opinion, a reasonable room for disagreement from the perspective of the layperson, then that interpretation controls, and a reasonable layperson could view these provisions as providing coverage for agent forgery by agents. And so, looking at the conflict there, Dong Gu's response is the provision the exclusion doesn't use the same word, agent, but it uses the phrase authorized representative. That presents a clear conflict. And in response to that, Dong Gu attacks the District Court for citing Black's Law Dictionary. Of course, Hawaii law consistently the Hawaii Supreme Court consistently cites Black's Law Dictionary to define undefined terms in a policy, and I think any layperson would say that an agent includes an authorized representative. I did want to get your position on the second issue. Yes. The $250,000 and whether you get that once or whether you get it every year. Yes, Your Honor. To that point, I would say that the District Court rested its determination on a finding of temporal ambiguity. The provisions were temporally ambiguous. We presented the issue both in terms of plain language and ambiguity, and we believe that the Court could affirm based on a determination of plain language or temporal ambiguity, but to speak directly to the cases cited by the District Court, they were mainly two California cases, Karen Kane and the ABS case, and what I would say about those cases is that they amply demonstrate that the provisions here defining occurrence and non-accumulation are ambiguous, but I would highlight one thing about those two cases. Those cases included a prior loss provision. That provision says that if there's coverage under this policy and a policy that was previously issued by the same insurer, the most you're going to get is one payout under one of the policy. And so even with all of those provisions, so with the three provisions, occurrence, non-accumulation, and prior loss, there was temporal ambiguity. In our case, we don't even have a prior loss provision. And so if those cases weren't temporally ambiguous, I would say... These different iterations of the policy are not speaking to each other. It's almost as if you just reset and get a new one every year. Correct, Your Honor. It's not a renewal of a policy. It's separate policies each year. Correct, Your Honor. Separate policies each year. The base number is the same, but each year the number changes from 0, 1, 2, 3, 4, and as the district court concluded, the forms are actually different from year to year. I can highlight those differences. You have to have an occurrence within each year. In other words, you can't just carry forward. If it didn't happen in year one, but then it happened in year two, you can't take that That's exactly correct, Your Honor. The non-accumulation provision does exactly that. It says there's no carryover. The non-accumulation provision also says that the provision is limited to losses or damages occurring during the policy period. So just as the provision is limited to what happens during the policy period, the provision is not forward looking to later occurrences. So at the very least you get one occurrence per policy period. Does the court have any further questions? I guess I should say, this point about following California law, I don't think that the hallmark of the Hawaii Supreme Court's jurisprudence is necessarily that it follows California knee-jerk every time. The hallmark, as this court observed, is that the Hawaii Supreme Court liberally construes coverage in favor of the insured as much as possible. That is the hallmark. So determining which way the Hawaii Supreme Court would go in determining, in viewing employee dishonesty, or in viewing the forgery provision, it's very clear which way the Hawaii Supreme Court would go in predicting Hawaii. Assuming there's a conflict or an ambiguity. That is correct, Your Honor. That is correct. And in determining whether there's a conflict or an ambiguity in the first instance, the perspective the court uses is that of a lay person. And so, I think before closing, I know that today there was a reference to the UCC coming back to the forgery provision. What I would say to that is that we're not reviewing a UCC provision. We're not reviewing a case about the UCC. We're reviewing an insurance policy. And insurance policies are to be construed, again, from the perspective of the lay person. And the lay person reading these provisions could easily conclude that there is coverage for forgery of checks made or drawn by one acting as your agent. And that would be including a bookkeeper, which is what happened in this case. If there are no further questions, I would respectfully ask that the Court affirm the judgment of the District Court. Thank you, Counsel. Thank you. Thank you, Your Honors. In terms of Hawaii insurance law favoring the insured, I think insurance coverage everywhere favors the insured. That does not mean, however, that they will use or manufacture an ambiguity to create coverage. In all of the Hawaii insurance law cases, they begin with the analysis that observes the observation that insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided that they are not in contravention of statutory inhibitions or public policy. And so that means or that includes you would not create an ambiguity where there is none. You would not use that to create coverage where viewing the policy as a whole, you can read it to be in harmony with one another and not completely disregard and exclusion. Do you agree that this is a forgery within the meaning of the policy? I do believe based on the language of a check or order or direction to pay a certain sum of money made or drawn by you or drawn by one acting as an agent that were it not for the employee dishonesty exclusion, it would fall under that provision. But again, if you read the policy as a whole, you can't simply disregard the clearly applicable exclusion. You have to give meaning to that exclusion. Is the forgery a defined term? Is that defined anywhere in this agreement? I think it's defined by the language of A5Q, which again talks about when it would constitute a negotiable instrument that the insured would be liable for. I don't think it's a separately defined term. And also, when you look at the argument of the ARC and what led the district court to create this separate subcategory of forgery by an agent, they always conveniently take out that wording of made or drawn by or drawn upon you. They just cut that out. And that can't define forgery because that would just be a check written by the company. So that defines the rather than a separate subcategory of forgery by agent. And it's only by looking at that phrase massaged in the order of words and what it modified and without looking at the policy as a whole that it resulted in completely disregarding exclusion 2H. In terms of the reasonable expectations of a lay person, I think it doesn't substitute for the analysis of a court in terms of analyzing the terms and conditions of the policy in terms of analyzing the circumstances for the policy in general. This commercial property policy with the endorsement to, and of course it doesn't override public policy as well. As far as the temporal ambiguity, again the California cases that the District Court relied upon exclusively did have the more general definition of an occurrence. It did not include that specific language that all loss or damage caused by the same person involving a series of related acts is considered one occurrence. And so based on that, those other cases did find that it was temporarily ambiguous that you could have more than one covered occurrence in each of the policies. And just briefly to address the prior loss provision that I don't believe is necessary in this case. Most prior loss language in these insurance policies extend coverage to an undiscovered loss that say may have occurred in a prior insurance company's policy, but you get the advantage of that. We don't have that here, so if anything, we would argue that DB's policy is stronger. They didn't agree to cover some undiscovered prior loss from another insurance company's policy. And the cases that we do rely upon find the non-accumulation language to be robust anti-stacking language that supports our position. That's all I have, Your Honor. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. All rise.
judges: SCHROEDER, RAWLINSON, BRESS